# 23-282

United States Court of Appeals
*for the*
Second Circuit

Fortessa Qorrolli,
*Plaintiff-Appellant*,

v.

Metropolitan Dental Associates, D.D.S.- 225 Broadway, P.C.,
Metropolitan Dental Associates, D.D.S., P.C.,
Mark Orantes, Individually, Paul I. Cohen, Individually,
*Defendants-Appellees*.

**On appeal from a Judgment of the United States
District Court for the Southern District of New York**

# BRIEF OF DEFENDANTS-APPELLEES

David C. Wims
Law Office of David Wims
1430 Pitkin Avenue, 2nd Floor
Brooklyn, N.Y. 11233
(646) 393-9550
*Counsel for Defendants-Appellees*

## <u>Table of Contents</u>

PAGE

Table of Authorities ......................................................... iii

Jurisdiction ................................................................. 1

Statement of Facts .......................................................... 1

Questions Presented ......................................................... 2

Summary of Argument ......................................................... 3

Argument .................................................................... 3

I.  The District Court properly granted Defendants' motion for summary judgment on Plaintiff's retaliation claims .................. 3

    A. Standard of review ................................................. 3

    B. Plaintiff did not engage in any protected activity ................ 4

II. The District Court exercised provident discretion in ordering a new trial after the parties' first trial ............................... 7

    A. Standard of review ................................................. 7

    B. The jury's verdict in the first trial was against the weight of the evidence and severely tainted by inadmissible evidence and hearsay ................................................ 7

       1. Legal standards ................................................. 7

          i.   Federal and state ......................................... 7

          ii.  NYC ....................................................... 8

       2. Plaintiff lacked relevant, admissible evidence on liability and damages ........................................... 8

       3. The damages award in the first trial was excessive and against the weight of the admissible evidence .............. 10

i

PAGE

     i.   Compensatory damages award was excessive .......... 10

     ii.   Punitive damages award was excessive ................. 17

III. Plaintiff had a fair opportunity to prove her damages at the
    second trial ........................................................... 19

    A. Standard of review ................................................ 19

    B. Plaintiff's psychiatric records were inadmissible ............... 19

    C. The witness deposition testimony was inadmissible ............ 20

    D. The anonymous fax was inadmissible ........................... 21

IV. Amicus' arguments are without merit............................... 22

    A. Judges and Juries Each Play Important Roles in Our
    Legal System ...................................................... 22

    B. The Trial Court Did Not Violate Qorrolli's Seventh
    Amendment Rights................................................ 23

Conclusion....................................................................... 26

## **Table of Authorities**

PAGE(S)

**Cases**

*Agosto v. New York City Dep't of Educ.*,
   982 F.3d 86 (2d Cir. 2020) ................................................. 8

*Ali v. Kipp*,
   891 F.3d 59 (2d Cir. 2018) ................................................. 7

*Cameron v. City of New York*,
   598 F.3d 50 (2d Cir. 2010) ................................................ 19

*Dotson v. City of Syracuse*,
   No. 5:04-CV-1388, 2011 U.S. Dist. LEXIS 20374
   (N.D.N.Y. Mar. 2, 2011) .................................................... 11

*EEOC v. United Health Programs of Am., Inc.*,
   2020 U.S. Dist. LEXIS 39587 (E.D.N.Y. 2020) .......................... 11

*Garcia v. Hartford Police Dep't*,
   706 F.3d 120 (2d Cir. 2013) ............................................... 4

*James v. Countrywide Fin. Corp.*,
   849 F. Supp. 2d 296 (E.D.N.Y. 2012) ..................................... 9

*Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*,
   716 F.3d 10 (2d Cir. 2013) .............................................. 4, 7

*Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*,
   957 F.2d 59 (2d Cir. 1992) ................................................ 4

*Lewis v. Am. Sugar Ref., Inc.*,
   325 F.Supp.3d 321 (S.D.N.Y. 2018) ....................................... 11

*MacCluskey v. Univ. of Conn. Health Ctr.*,
   No. 3:13-cv-1408 (MPS), 2017 U.S. Dist. LEXIS 23520
   (D. Conn. Feb. 21, 2017) ................................................... 11

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013) ............................................. 5, 8

*Negron v. Ulster Cty.*,
   No. 1:08-CV-692, 2012 U.S. Dist. LEXIS 117142
   (N.D.N.Y. Aug. 20, 2012) .................................................. 11

PAGE(S)

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007) ................................................. 8

*Rojas v. Roman Cath. Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011) ................................................. 4

*Schering Corp. v. Pfizer Inc.*,
189 F.3d 218 (2d Cir. 1999) ............................................... 19

*Sharkey v. JP Morgan Chase*,
2018 U.S. Dist. LEXIS 35538 ...................................... 16, 17

*Sooroojballie v. Port Auth. of N.Y. & N.J.*,
816 Fed. Appx. 536 (2d Cir. 2020) ............................. 12, 13, 23

*United States v. Ford*,
435 F.3d 204 (2d Cir. 2006) .............................................. 19

*Villalta v. JS Barkats, P.L.L.C.*,
2021 U.S. Dist. LEXIS 75071 (S.D.N.Y. 2021) .................... 14, 16

*White v. New York State Office of Children & Family Servs.*,
No. 5:11-CV-309, 2021 U.S. Dist. LEXIS 16061
(N.D.N.Y. Jan. 28, 2021) ................................................. 11

*Williams v. New York City Dep't of Educ.*,
No. 19 CIV. 1353 (CM), 2019 WL 4393546
(S.D.N.Y. Aug. 28, 2019) .................................................. 6

**Statutes**

28 U.S.C. § 1291 .......................................................... 1

42 U.S.C. §§ 2000e *et seq.*, Civil Rights Act of 1964 Title VII ........ *passim*

New York State Human Rights Law ("NYSHRL"),
N.Y. Exec. L. §§ 290 *et seq.*..................................... 1, 7, 14

**Rules**

Fed. R. Evid. P. 403 ...................................................... 22

Fed. R. Evid. P. 801 ...................................................... 22

Fed. R. Evid. P. 803(4) ................................................... 19

iv

PAGE(S)

**Regulations**

N.Y.C. Admin. Code §§ 8-101 *et seq.* ........................................ 1

**Other Authorities**

U.S. Const. Amend. VII ............................................. 23, 24, 25

**Jurisdiction**

This Court has appellate jurisdiction over this matter under 28 U.S.C. § 1291 pursuant to: (a) the district court's exercise of jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; (b) the district court's February 14, 2023 final judgment (JA 1627); and (c) Plaintiff Appellant's *Notice of Appeal*, dated March 3, 2023 (JA 1628).

**Statement of Facts**

Plaintiff Appellant Fortesa Qorrolli is a dental hygienist and brought employment discrimination claims against her former employer and two of her supervisors in the district court below. (JA 58 ¶¶ 2-4; 27 ¶ 1). She asserted that the Defendants subjected her to sex discrimination and a hostile work environment and retaliated against her by forcing her resignation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.* (JA 29-36).

This case was first tried before a jury and the Honorable Denise L. Cote from October 24, 2022 through October 27, 2022. (JA 620-1082). On October 26, 2022, the first jury returned a verdict on liability for Plaintiff and awarded Plaintiff $575,000.00 in compensatory damages for emotional distress. *Id.* Then, on

1

October 27, 2022, the first jury awarded Plaintiff $2,000,000.00 in punitive damages. *Id.*

After Defendants filed their post-trial motions seeking a new trial, inter alia, on December 15, 2022, Judge Cote granted Defendants' motion for a new trial. (SPA 18). The parties again tried this case before a jury from February 6, 2023 through February 9, 2023. (JA 1110-1623).

The second jury found against Plaintiff on both its federal and state hostile work environment sexual harassment claims; and in favor of Plaintiff on its city hostile work environment sexual harassment claim, awarded Plaintiff $1.00 in nominal damages and declined to award compensatory or punitive damages. *Id.* The Court entered judgment thereon on February 14, 2023. (JA 1627).

On March 14, 2023, Plaintiff filed a motion for a new trial, arguing that significant evidentiary issues warranted a new trial on damages only and that the second jury's award to Plaintiff of nominal damages was not supported by the weight of the evidence. (JA 1630-1697). The district court denied Plaintiff Appellant's post-trial motion; and its request for reconsideration. (SPA 116-149). This appeal ensued thereafter.

## **Questions Presented**

1. Did the district court properly hold that Plaintiff did not engage in 'protected activity'?

2. Did the district court abuse its discretion in granting Defendants' motion for a new trial on liability and damages?

3. Did the district court abuse its discretion in precluding the introduction of Plaintiff's psychiatric records, deposition testimony from an alleged witness, and the anonymous fax that accused Defendant Appellee Orantes of sexual harassment?

**Summary of Argument**

1. The district court properly granted summary judgment on Plaintiff's retaliation claims because Plaintiff did not engage in any 'protected activity'.

2. The district court providently exercised its discretion in granting Defendants' motion for a new trial because the first jury's verdict was against the weight of the evidence and/or impermissibly tainted by inadmissible evidence.

3. Plaintiff had a fair chance to prove her damages at the retrial.

**Argument**

I. *The District Court properly granted Defendants' motion for summary judgment on Plaintiff's retaliation claims*

A. Standard of review

This Court reviews a district court's grant of summary judgment *de novo*, resolving all inferences in favor of the nonmoving party and affirming only where "there is no genuine dispute as to any material fact and the movant is entitled to

3

judgment as a matter of law." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126-27 (2d Cir. 2013) (internal quotation marks omitted).

> B. Plaintiff did not engage in any protected activity

Under federal and state law, to prove retaliation a plaintiff must establish that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly*, 716 F.3d at 14 (citation omitted). Protected activity need not consist of a formal complaint of discrimination; an "internal complaint to company management" can constitute a protected activity under Title VII. *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992). The Plaintiff's complaint, however, cannot have been so generalized that the employer "could not reasonably have understood that she was complaining of conduct prohibited by Title VII." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (citation omitted).

On Defendants-Appellees' motion for summary judgment, Plaintiff alleged that she complained about sexual harassment to Defendants-Appellees on three (3) occasions. (SPA 2-4). However, this position is belied by Plaintiff-Appellant's sworn testimony in her deposition. There, she indicated in relevant part, "[she] never explicitly complained that Defendant Orantes was subjecting her to "sexual

4

harassment". (JA 88). Plaintiff did not recall what year the alleged sexual

harassment occurred. (JA 87). Plaintiff did not recall what year she allegedly

complained to Dr. Cohen about the alleged sexual harassment. (JA 91).

Further, she asserted that her statement to Orantes as he approached her in

the Spring of 2016 to "back off" is protected activity under the subject statutes.

(SPA 11). She also claimed that rebuffing Orantes' alleged unwelcome sexual

advances on 'numerous occasions' was protected activity. *Id.* Finally, she claimed

that she gave Dr. Cohen a complaint letter in 2016 and put all of her grievances

therein. (SPA 9-11). As a result, several problems exist.

One, the "back off" comment makes no mention of alleged sexual

harassment and is too vague and generalized to be reasonably understood as a

complaint about behavior prohibited by Title VII. It could reasonably be construed

as the declarant not wanting to speak to or interact with anyone (including Orantes)

at the moment, for example. It wouldn't place a reasonable employer or person on

notice that the declarant was attempting to complain about or oppose sexual

harassment or gender discrimination in any way. The chosen words do not convey

that message.

Two, rebuffing alleged sexual advances is not protected activity either. The

law is unclear about whether merely rejecting an alleged harasser's alleged sexual

advances constitutes an protected activity under Title VII. See *Mihalik*, 715 F.3d at

5

115, n.12; see also *Williams v. New York City Dep't of Educ.*, No. 19 CIV. 1353 (CM), 2019 WL 4393546, at *11 (S.D.N.Y. Aug. 28, 2019) (collecting cases).

Finally, the letter which Plaintiff gave to Dr. Cohen in 2016 makes no reference whatsoever to alleged sexual harassment. (SPA 11). It does not list a single instance that could be understood as that. It also makes no mention of any sort of discrimination. It is a laundry list of workplace grievances regarding for example, people and situations at work that Plaintiff did not like or appreciate; co-workers' words and/or actions that Plaintiff did not like; and personality differences. It does not implicate the anti-discrimination laws in any form, shape or fashion. There is no other reasonable construction that it can be given, in light of the wording therein. Plaintiff failed to raise a genuine dispute as to any material fact related her engagement in alleged protected activity and therefore, Defendants-Appellees were entitled to judgment as a matter of law.

For these reasons, the trial court's finding that Plaintiff engaged in no 'protected activity' regarding her retaliation claims was correct, accurate and based on both the facts and controlling law. This Court should not disturb that well reasoned, deliberative decision, given that the record contains no actions or words of Plaintiff that could be construed as referencing harassment or discrimination of any kind.

II.   *The District Court exercised provident discretion in ordering a new trial after the parties' first trial*

   A. Standard of review

This Court reviews a district court's grant of a Rule 59 motion for a new trial for abuse of discretion, viewing the evidence "in the light most favorable to the nonmoving party." *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)). The Court will "reverse a judgment only if the district court (1) based its decision on an error of law, (2) made a clearly erroneous factual finding, or (3) otherwise rendered a decision that cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted).

   B. The jury's verdict in the first trial was against the weight of the evidence and severely tainted by inadmissible evidence and hearsay

      1. *Legal standards*

         i.  Federal and state

"The standards for evaluating hostile work environment . . . claims are identical under [federal law] and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). To prove that she was subjected to a hostile work environment, a plaintiff must show that the defendant's conduct "(1) is objectively severe or pervasive -- that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an

7

environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted). A workplace is objectively hostile when it is "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his or her employment were thereby altered." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020) (citation omitted).

      ii.  NYC

Claims under the NYCHRL must be analyzed "separately and independently from any federal and state law claims" because the NYCHRL is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted). To prevail on a hostile work environment claim under the NYCHRL, a Plaintiff "need only show differential treatment -- that [she] is treated 'less well' -- because of a discriminatory intent." *Id.* at 110 (citation omitted).

      2.  *Plaintiff lacked relevant, admissible evidence on liability and damages*

The Plaintiff testified at the first trial that there were only two (2) incidents of physical contact between her and Mr. Orantes – touching with no explicit sexual

8

overtures made. (JA 710-712). Plaintiff's case in the first trial was solely

dependent on inadmissible hearsay and innuendo repeatedly heard by the jury

regarding the alleged, unsubstantiated sexual escapades of Mr. Orantes and several

of Plaintiff's female, former co-workers. (SPA 32). However, Plaintiff admitted

that she did not actually have any first-hand knowledge of what Mr. Orantes

allegedly did with others because she did not hear or see it. Plaintiff failed to take

all reasonable and necessary legal steps to secure testimony from these alleged

witnesses.

In addition, Plaintiff testified that she experienced sexual harassment every

day and all the time, but could not identify a single incident within the statutory

limitations period.[1] She also testified that she was subjected to harsh discipline by

Mr. Orantes regarding her work performance, which she alleged was somehow

evidence of sexual harassment, when in fact it was legitimate workplace feedback

and/or discipline. (SPA 3).

The evidence adduced by Plaintiff at the first trial fell woefully short of

meeting the applicable standard. Plaintiff's case in chief consisted of only one

first-hand witness and one exhibit. Plaintiff failed to set forth credible testimony

---

[1] Plaintiff filed the Charge with the EEOC on July 28, 2016. See Complaint ¶4. Thus, only
alleged misconduct occurring on or after September 28, 2015 would fall within the 300-day
limitations period. See *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 307-08 (E.D.N.Y.
2012)

regarding the details of any alleged incidents of sexual harassment within the time period covered by action below. Plaintiff did not establish that any alleged harassment was severe and pervasive, nor the number of times it allegedly occurred. Two alleged incidents of non-sexual touching are not "extraordinarily severe," and the alleged incidents were episodic rather than pervasive. The first jury's verdict was therefore seriously erroneous and constituted a miscarriage of justice. As explained above and below, both awards were excessive and disproportionate to the proofs adduced at trial and contrary to the controlling case law.

### 3. The damages award in the first trial was excessive and against the weight of the admissible evidence

#### i. Compensatory damages award was excessive

Here, the first jury awarded Plaintiff $575,000.00 in compensatory damages. (JA 1038-1040). Plaintiff offered no medical expert testimony on her emotional distress and no medical records were admitted into evidence. (JA 1038-1040). First, Plaintiff did not prove emotional distress in any amount. She claimed that she suffered from a number of maladies, including but not limited to anxiety, depression and post-traumatic syndrome disorder, but yet there was no testimony and/or medical record from her or anyone on causation.

Further, given the lack of expert testimony and medical records, Plaintiff's entitlement to emotional distress, if liability were even proven, would be

categorized as 'garden variety'. In the 2nd Circuit, judges use a matrix to assess the propriety of emotional distress or pain and suffering awards in employment discrimination cases. "[N]on-economic damages can fall into one of three categories - garden-variety, significant, or egregious." *Lewis v. Am. Sugar Ref., Inc.,* 325 F.Supp.3d 321, 364 (S.D.N.Y. 2018). "Awards compensating garden-variety emotional distress or mental anguish in the Second Circuit range from $30,000 to $125,000." *Id.* (collecting cases); see *EEOC v. United Health Programs of Am., Inc.,* 2020 U.S. Dist. LEXIS 39587, at *45 (E.D.N.Y. 2020); *MacCluskey v. Univ. of Conn. Health Ctr.,* No. 3:13-cv-1408 (MPS), 2017 U.S. Dist. LEXIS 23520, *48-*49 (D. Conn. Feb. 21, 2017).

For perspective, courts in this district have recently found awards of $40,000 or $50,000 to be appropriate for garden variety emotional distress claims resulting from a hostile work environment where the Plaintiff's emotional distress did not require medical treatment or

result in physical manifestation. See *White v. New York State Office of Children & Family Servs.,* No. 5:11-CV-309 (FJS/ATB), 2021 U.S. Dist. LEXIS 16061, *14 (N.D.N.Y. Jan. 28, 2021) (Scullin, S.J.) (denying new trial on condition that the plaintiff accepts $50,000 remittitur on hostile work environment claim); *Dotson v. City of Syracuse,* No. 5:04-CV-1388 (NAM/GJD), 2011 U.S. Dist. LEXIS 20374, *61 (N.D.N.Y. Mar. 2, 2011) (Mordue, C.J.) (same); *Negron v. Ulster Cty.,* No.

11

1:08-CV-692 (FJS/RFT), 2012 U.S. Dist. LEXIS 117142, *23 (N.D.N.Y. Aug. 20, 2012) (Scullin, S.J.) (finding $40,000 remittitur appropriate to compensate Plaintiff's Title VII hostile work environment claim).

In *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. Appx. 536 (2nd Cir. 2020), which was a Title VII hostile work environment case based on race and national origin, the court reviewed the jury verdict in favor of Plaintiff for $2,160,000 in emotional distress damages. *Id.* at *18. Therein, the Court noted that "we are bound by precedent to compare the awards in this case with the awards in analogous cases." *Id.* Based on the relevant factors, the court reduced the jury's compensatory damages award to $250,000.00. In support thereof, it stated in relevant part:

> Although Sooroojballie urges the Court to uphold the jury verdict because the emotional distress supports an award in the "egregious" category, we find that argument unpersuasive. In particular, Sooroojballie did not provide evidence of lasting psychological effects from the hostile work environment, and had no further contact with his internist (who was treating his mental health issues) after he began his new job with the City of New York on October 27, 2014.**6** *See Menghi v. Hart*, 745 F. Supp. 2d 89, 107 (E.D.N.Y. 2010) ("Awards at the high end of the spectrum may be warranted in cases that generally contain [**23] evidence of debilitating and permanent alterations in lifestyle." (quotation marks omitted)), *aff'd*, 478 F. App'x 716 (2d Cir. 2012). In short, Sooroojballie's evidence falls far short of the type of shocking, prolonged discriminatory conduct and/or long-term emotional harm that are part and parcel of the larger damage awards that can be sustained for egregious cases. *See, e.g., Turley*, 774 F.3d at 146, 163 (upholding an award of $1.32 million **[*548]** when the plaintiff was subjected to "an extraordinary and steadily intensifying drumbeat of racial insults, intimidation, and degradation over a period

12

of more than three years," resulting in post-traumatic stress disorder, short-term adjustment disorder, depression, a panic disorder, and multiple hospitalizations). Here, Sooroojballie's proof regarding emotional distress did not contain the evidence of prolonged mental harm or negative, long-term prognosis that is typically present in cases with awards around $500,000. *See, e.g., Ramirez v. New York City Off— Track Betting Corp.*, 112 F.3d 38, 40, 41 n.1 (2d Cir. 1997) (upholding district court's decision to reduce $1.14 million pain and suffering award to $500,000 in Title VII case where evidence demonstrated that the plaintiff was unable to work and [**24] was "rendered permanently non-functional"); *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2019 U.S. Dist. LEXIS 56556, 2019 WL 1450449, at *12 (S.D.N.Y. Mar. 31, 2019) (granting motion for remittitur and reducing award from $750,000 to $500,000 in a retaliation case where the plaintiff suffered significant emotional distress; the plaintiff testified about her "insomnia, a herniated disc, anxiety, weight gain, and suicidal thoughts" and her psychiatrist testified that the plaintiff's "prognosis was 'poor'"); *Komlosi v. Fudenberg*, No. 88 CIV. 1792 HBP, 2000 U.S. Dist. LEXIS 4237, 2000 WL 351414, at *17 (S.D.N.Y. Mar. 31, 2000) (awarding the plaintiff $500,000 for non-economic loss where psychological injury "destroyed [the plaintiff's] ability to practice his profession"), *aff'd*, No. 01-89(XAP), 2002 U.S. App. LEXIS 13310, 2002 WL 34244996 (2d Cir. May 13, 2002); *see also Watson v. E.S. Sutton, Inc.*, No. 02 CIV. 2739 (KMW), 2005 U.S. Dist. LEXIS 31578, 2005 WL 2170659, at *15 (S.D.N.Y. Sept. 6, 2005) (finding that $500,000 emotional distress damages was excessive, and noting that "[the plaintiff] has not pointed us to any comparable cases—that is, cases with no permanent psychological damage or disability resulting from the harassment—with awards so high as the one the jury here gave her"), *aff'd*, 225 F. App'x 3 (2d Cir. 2006).

816 Fed. Appx. 536 at *22-24.

Another recent precedent that is on point is *Villalta v. JS Barkats, P.L.L.C.*, 2021 U.S. Dist. LEXIS 75071 (S.D.N.Y. 2021). There, Plaintiff filed a lawsuit seeking recourse for egregious acts of *quid quo pro* sexual harassment and hostile work environment under Title VII, the NYSHRL and the NYCHRL. *Id.* at *1. The acts included several sexual assaults, or rapes. *Id.* at *29. The Plaintiff prevailed on her sexual harassment claims and the Court awarded $350,000.00 in compensatory damages and $700,000.00 in punitive damages. *Id.* at *36-54. The court in *Villalta* noted that "Villalta did not submit a diagnosis or opinion from a mental health professional of any severe chronic condition, such as post-traumatic stress syndrome ("PTSD").", just as in the instant case. *Id.* at *41-42.

With respect to Plaintiff's emotional distress, the Court noted:

Indeed, cases with relatively similar combinations of egregious conduct, harm inflicted, and level of corroboration have yielded emotional distress awards of far more modest amounts. See, e.g., *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 78-79, 99-100 (E.D.N.Y. 2020) (finding that emotional distress award of $200,000 "strikes a proper balance between the traumatic abuse plaintiff suffered and the near-complete absence of corroborating evidence" where defendant employer, who defaulted, made repeated sexual advances, coerced plaintiff into having sex, withheld pay in retaliation for plaintiff's request to maintain professional relationship, and ultimately threw plaintiff against a wall, choked her, and told her never to come back); *Garcia*, 2019 U.S. Dist. LEXIS 203447, 2019 WL 8274296 at *8 (awarding $175,000 in emotional distress damages to plaintiff who "suffered physical violence, harassment, and discrimination for more than a year, leading to psychological treatment" including therapy and medication for diagnoses of PTSD and major depressive disorder), *R. & R. adopted*, 2020 U.S. Dist. LEXIS 50791, 2020 WL 1435002 (S.D.N.Y. March 24, 2020); *Gutierrez*, 2018 U.S. Dist. LEXIS 106808, 2018 WL 3432786 at *9-10 (recommending $130,000 emotional distress award where

14

plaintiff endured severe and intense sexually harassing behavior that caused her migraine headaches, nausea, vomiting, sleep disorders, and anxiety lasting for **[*43]** over eighteen months); *Mayo-Coleman v. American Sugar Holdings, Inc.*, No. 14-CV-79, 2018 U.S. Dist. LEXIS 94821, 2018 WL 2684100, at *3, *5 (S.D.N.Y. June 5, 2018) (reducing emotional distress award from $1.7 million to $500,000 as "the greatest amount that can be awarded without being excessive" where plaintiff had both psychological and physical manifestations resulting from extreme sexual harassment).

In another recent case, *Angulo v. 36th Street Hospitality LLC*, No. 19-CV-5075, 2020 U.S. Dist. LEXIS 137816, 2020 WL 4938188, at *2-5 (S.D.N.Y. July 31, 2020), *R. & R. adopted*, 2020 U.S. Dist. LEXIS 153278, 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020), the girlfriend of a restaurant owner encouraged their family's babysitter - the plaintiff - to apply for a job as waitress, which she did. Several months into her employment, the plaintiff attempted suicide as the result of trying to cope with an earlier sexual assault that did not involve her employer. After being hospitalized, the plaintiff returned to work at the restaurant. Several months later, while babysitting the owner's daughter, the owner plied her with alcohol, forced her to have oral sex, raped her, and sexually harassed her for the ensuing three weeks while she continued to work at the restaurant. The plaintiff then attempted suicide two more times, quit her job, and attended in-patient and out-patient treatment programs and therapy over the next two years. She later regularly saw a psychiatrist and was treated and took medication for PTSD, binge eating **[*44]** disorder, bipolar disorder, and borderline personality disorder. When the plaintiff brought an action for sexual discrimination, the restaurant owner never appeared, resulting in a default judgment. As of the inquest, the plaintiff continued to experience panic attacks, distrust of others, and self-cutting, and she remained under the care of and regular treatment by a psychiatrist and therapist.

The Court sets forth the facts of *Angulo* in some detail because the court in that case declined to award the $750,000 in emotional harm damages requested by the plaintiff and instead awarded $300,000. 2020 U.S. Dist. LEXIS 137816, 2020 WL 4938188 at *13-14. In doing so, the court reviewed "other cases in which the plaintiff suffered a sexual assault" and found they "reflect[ed] a trend of awarding emotional distress damages 'in the low-to-mid hundreds of thousands of dollars.'" *Id.* at *13 (quoting *Offei v. Omar*, No. 11-CV-4283, 2012 U.S. Dist. LEXIS 80171, 2012 WL 2086294, at *5 (S.D.N.Y. May 18, 2012) (collecting cases awarding emotional distress damages of $100,000 to $500,000)). That is notable,

because the facts in *Angulo* include several corroborating indicia of deep, debilitating, and lasting emotional harm not present in the instant case.

*Villalta v. JS Barkats, P.L.L.C.*, 2021 U.S. Dist. LEXIS 75071 at *42.

Upon considering the lack of medical records, lack of medical expert testimony on causation, and corroboration, the trial court correctly found that the first jury's $575,000.00 verdict for Plaintiff's emotional distress was both excessive and shocked the judicial conscience, especially when considering that other Plaintiffs in this circuit have been awarded substantially less after having been **sexually assaulted**, inter alia. *Id.* Consistent with precedent, the instant Plaintiff Appellant failed to introduce at the first trial credible, or any, evidence of debilitating and permanent alterations in her lifestyle or work ability, nor of prolonged mental harm or negative, long-term prognosis. The record reflected the contrary, that the Plaintiff was employed again after leaving the Defendants' employ, was married three years ago and had a baby one year ago. (JA 803-804). Just like in *Villalta*, the instant Plaintiff Appellant offered no medical testimony or records. As such, a similar result should ensue here.

In a fundamentally analogous situation, the SDNY agreed. In *Sharkey v. JP Morgan Chase*, 2018 U.S. Dist. LEXIS 35538, after a jury verdict for Plaintiff in the amount of $563,000.00 in emotional distress and an equal amount in back pay, and on Defendants' post-trial motion, the Court overturned the jury's verdict. In so doing, the Court stated in relevant part:

16

"[T]he size of a jury's verdict may be so excessive as to be 'inherently indicative of passion or prejudice' and to require a new trial," without remittitur. *Id.* (citing *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 603 (5th Cir. 1988)). "Influences such as caprice, passion, bias, and prejudice are antithetical to the rule of law. If there is a fixture of due process, it is that a verdict based on such influences cannot stand." *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 475-76, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993) (O'Connor, J., dissenting) (collecting cases). Prejudice may be found to exist where the appropriate amount of the remittitur "is totally out of proportion to the damages" awarded by the jury. *Ramirez*, 112 F.3d at 41.

2018 U.S. Dist. LEXIS 35538 at *18.

Here, the first jury's award was very out of proportion to the proven damages; and the publication to the first jury of the Anonymous letter was extremely prejudicial, inviting the jury to award damages based on scandalous and inflammatory hearsay without foundation, authentication or cross-examination. For all of these reasons, the trial court properly granted Defendants' Appellees' motion for a new trial. In so doing, the court made no errors of fact or law.

    ii. Punitive damages award was excessive

The first jury's damages award illustrates that its verdict was not based on the admissible evidence introduced at the first trial of Mr. Orantes's alleged treatment of the Plaintiff. No aggravating factors were offered or proven in this matter. Plaintiff alleged no physical harm whatsoever. Plaintiff did not produce evidence of indifference or recklessness to her safety or others. The two alleged incidents cannot be characterized as repeated or consistent, nor severe or

17

malicious. Plaintiff offered no evidence of malice. The first trial testimony failed to support an award of punitive damages at all – it does not even support a finding of liability. The two alleged incidents of non-explicitly sexual touching and alleged, undated comments were not reprehensible, even if true.

There was no evidence of explicit groping, sexual assault or violence at the first trial. The subject, alleged incidents testified to by Plaintiff were not depraved nor particularly egregious or long-lasting. Notably, the Plaintiff's alleged harassment was completely contradicted by Defendant Mr. Orantes' testimony. Plaintiff did not prove that any of her allegations were more likely true than not, especially in light of the substantial inconsistencies in her testimony.

In other words, the first jury's punitive damages award was unreasonable and disproportionate to the amount of alleged harm to the Plaintiff and to the general damages recovered. As a result, the jury's punitive damages award therein was contrary to the evidence and precedent and was properly overturned on Defendants Appellees' post-trial motion. The first jury's award of punitive damages was unconstitutionally excessive and denied Defendants due process. The award was shocking to the conscience. Plaintiff Appellant has failed to identify an error of law, erroneous factual finding or applicable precedent on which to base the first jury's award of punitive damages, an issue on which it bears the burden.

18

III.    *Plaintiff had a fair opportunity to prove her damages at the second trial*

      A. <u>Standard of review</u>

This Court reviews for abuse of discretion the admission or exclusion of evidence at trial. *United States v. Ford*, 435 F.3d 204, 214 (2d Cir. 2006). When reviewing a district court's decision to admit evidence, "[e]ither an error of law or a clear error of fact may constitute an abuse of discretion." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999) (internal quotation omitted). Even when a district court's evidentiary ruling is erroneous, we will not grant a new trial if the error was harmless. *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010).

      B. <u>Plaintiff's psychiatric records were inadmissible</u>

The trial court properly excluded Plaintiff from introducing her psychiatric records at the second trial of this matter. Plaintiff argues that the records were admissible as medical records pursuant to Rule 803(4), Fed. R. Evid. There was no error in the exclusion, and no prejudice to the plaintiff from that exclusion.  The records contain general descriptions of the Plaintiff's mental wellbeing -- including that she was having problems in the workplace, having trouble sleeping, and experiencing symptoms of depression. Many of the later entries are "cut and paste" repetitions of prior entries. Very few entries reflect any statements made by the Plaintiff to the doctor.  There is no description of a specific event and no use of the term sexual harassment.

The records are inadmissible hearsay, lack foundation and are irrelevant, since they contain no statement of causation regarding their reference to Plaintiff's emotional state or distress. Without that, a jury could be easily confused into thinking it is competent to determine medical or clinical causation, which is likely what occurred at the first trial. The lay person jury is not in a position to do that, and Defendants Appellees posit the presentation of such evidence to the jury would likely confuse it and obfuscate the issues.

Further, Plaintiff testified to her emotional state at the time, including any formal diagnoses of which she was aware at the relevant time. Given that placing Plaintiff's psychiatric records into the proper context would likely be difficult, if not impossible, for the lay person jury, any probative value was outweighed by the prejudicial effect. Therefore, Plaintiff's psychiatric records were properly excluded under Federal Rules of Evidence ("FRE") 403 and 801.

### C. The witness deposition testimony was inadmissible

The trial court ruled that the deposition testimony of Mercedes Vila was not admissible at the second trial on the ground that the specific passages of the deposition described by Plaintiff's counsel during his proffer did not sufficiently support the reason given for their admission - that Ms. Vila was present as the plaintiff complained to Dr. Cohen that Orantes was sexually harassing the Plaintiff. Plaintiff claimed a that Ms. Vila was unavailable to testify in person at trial due to a

20

recent medical diagnosis. However, when counsel for the parties deposed her, she was at her workplace and away from her residence. Since she was capable of traveling to work at the relevant time, she could have traveled to the courthouse for both trials. Therefore, her deposition testimony was properly ruled inadmissible for want of unavailability of the deponent.

Even assuming she had come to testify in person at trial, her testimony was irrelevant, duplicative and prejudicial. Plaintiff wanted to present Ms. Vila to testify that she (Ms. Vila) was subjected to improper conduct at the hands of Mario Orantes. Whether true or not, her testimony will not make Plaintiff's allegations any more or less likely to be true, and would essentially be reputation evidence, which is impermissible as discussed above.

D. The anonymous fax was inadmissible

The Plaintiff contends that the Court erred in excluding as an exhibit at trial an anonymous fax sent to Defendants' workplace. The plaintiff admitted that the fax contains inadmissible hearsay, but argued that it should have been admitted as evidence that the Defendants had received notice of allegations of sexual harassment against Orantes. Notably, the fax does not discuss the Plaintiff Appellant.

The trial court properly excluded Plaintiff from introducing the anonymous letter at the second trial of this matter. The letter was inadmissible hearsay, lacked

21

foundation, was anonymous and unsigned. Plaintiff testified at the first trial of this matter that the author of said letter was Toya Howard. (JA 723). Plaintiff listed Ms. Howard in its witness list in the parties' proposed, joint pre-trial order for the second trial dated 1/18/2023. In the event that Plaintiff wished to have Ms. Howard testify at trial then she could have made her statement in court and been subjected to cross-examination. The anonymous letter does not indicate whether the declarant had first hand knowledge of the alleged incidences described therein. In addition, given that its sensational and scandalous allegations are more prejudicial than probative, it was properly excluded under FRE 403 and 801 as well.

IV.     *Amicus' arguments are without merit*

A. Judges and Juries Each Play Important Roles in Our Legal System

In our legal system, both judges and juries have their proper roles. The role of judges includes acting as a referee of sorts for pre-trial and trial proceedings, deciding legal questions and review of jury awards, inter alia. Amicus argues that judges should defer to juries without any system of checks and balances. Appellees agree to some extent, and invite this Court to defer to the jury verdict in the second trial of this matter.

However, deference is not appropriate when juries are subjected to prejudicial and scandalous hearsay without foundation, authentication or cross-examination. That is simply not how our system works. That is, however, what

22

occurred in the first trial of this matter. This Court has recognized that, in fact, trial and appellate judges should review jury awards to conform them to precedent and reasonableness. In *Sooroojballie v. Port Auth. of N.Y. & N.J.*, *supra*, this Court stated, "we are bound by precedent to compare the awards in this case with the awards in analogous cases." 816 Fed. Appx. 536 at *18. Policing verdicts is one of the jobs of both trial and appellate judges. Taking Amicus' argument to its logical end, the legal system could operate without judges or appellate courts, and only juries and litigations. This is absurd.

In other words, the trial court followed binding precedent from the 2nd Circuit, but somehow Amicus believes this is improper. Amicus wishes to turn a Plaintiff's day in court into a lottery ticket subject to the emotional whims of juries, without regard to legal principles like precedent, post-trial motions and appellate review. Given this Court's precedent, which is on point, the trial court was duty bound to vacate the first jury's awards, in the interest of justice. That court's conclusions should not be easily disturbed, given the trial court's opportunity to observe first-hand the parties, witnesses and the jury.

B. The Trial Court Did Not Violate Qorrolli's Seventh Amendment Rights

Amicus next argues that the trial court violated Plaintiff Appellant's seventh amendment constitutional rights. The Seventh Amendment grants civil litigants "the right of trial by jury" and provides, in relevant part, that "no fact tried by a

23

jury, shall be otherwise reexamined in any Court." U.S. Const. Amend. VII.
Amicus then acknowledges that when courts overstep their authority by "re-
examin[ing]" facts that were before the jury, and discarding the jury's findings
without proper basis, they violate litigants' Seventh Amendment rights.
Defendants Appellees agree.

Here, the trial court's vacatur of the first jury's verdict was not based on 're-
examining facts nor discarding the jury's findings without proper basis. It was
based on the court's observation that the jury had been improperly influenced by
inadmissible hearsay, unreliable evidence and innuendo. This included, but was
not limited to, Plaintiff's repeated recitation of things she was told by others and
publication to the jury of the anonymous letter, inter alia. Given these deficiencies,
it is unclear why Amicus believes that the first jury's verdict should stand, or was
valid. Amicus generally argues that the trial court abused its discretion.

Any first year law student knows that hearsay is inadmissible under the FRE.
It is also evident and beyond question that trial evidence must be relevant,
probative and competent. In the first trial, that was not the case. The trial court
did not re-examine facts found by the first jury, but rather determined the first
jury's conclusions had no basis in fact or law, which is appropriate on a post-trial
motion. In fact, that is one of the trial court's jobs. The trial court's basis was very
clear, in line with precedent and just. In fact, the trial court indicated after the

24

second trial: "I must say, counsel, this trial is the trial that we should have had in the first instance. The amount of hearsay that came in in the first trial was extraordinary, and I've never seen anything like it." (JA 1621-1622).  For these reasons, the trial court did not violate Plaintiff Appellant's seventh amendment constitutional rights.

Contrary to Amicus' argument, the operations and machinations of our legal system are functioning as intended.  Amicus posits that this case raises a legal issue that requires this Court to review the trial court's judgment *en banc*, without clearly defining said legal issue.

Essentially, Amicus would prefer that juries have unfettered discretion in awarding damages to civil rights (or other) Plaintiffs.  In other words, Amicus wishes to eliminate judicial and/or appellate review of jury verdicts.  That would result in a legal system based on only the interests of one side of the aisle.  It would also allow the final word on what is legal to be had by lay persons without professional, legal knowledge.  This is preposterous.  Amicus wishes to rewrite the rules of civil and appellate procedure unilaterally without congressional or court input.  Amicus' arguments are misplaced and without precedent.  This Court need not resort to the extreme positions taken in Amicus' brief, since this matter should be decided on the law and facts, irrespective of secondary and tertiary considerations.  Appellees are confident this Court is up for the task.

**Conclusion**

This Court should affirm the district court's order, dated December 22, 2021, granting Defendants' motion for summary judgment on Plaintiff's retaliation claims. This Court should also affirm the district court's order, dated December 15, 2022, granting Defendants' motion for a new trial. This Court should also affirm in its entirety the district court's judgment dated February 14, 2023.

Dated:  November 25, 2023
        Brooklyn, New York

                                    Respectfully submitted,

                                    /s/  David C. Wims
                                    LAW OFFICE OF DAVID WIMS
                                    David C. Wims, Esq. (DW-6964)
                                    *Attorneys for Defendants-Appellees*
                                    1430 Pitkin Ave., 2ⁿᵈ Floor
                                    Brooklyn, NY 11233
                                    (646) 393-9550

## **Certificate of Compliance**

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 6,409 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

/s/  David C. Wims
David C. Wims, Esq.