# 23-282

## United States Court of Appeals
### *for the*
### Second Circuit

Fortessa Qorrolli,

*Plaintiff-Appellant*,

v.

Metropolitan Dental Associates, D.D.S.- 225 Broadway, P.C.,
Metropolitan Dental Associates, D.D.S., P.C.,
Mark Orantes, Individually, Paul I. Cohen, Individually,

*Defendants-Appellees*.

**On appeal from a Judgment of the United States
District Court for the Southern District of New York**

## REPLY BRIEF OF PLAINTIFF-APPELLANT

| | |
|---|---|
| Derek Smith<br>Zachery Holzberg<br><br>Derek Smith Law Group, PLLC<br>Suite 4905<br>1 Penn Plaza<br>New York, N.Y. 10119<br>(212) 587-0760 | Stephen Bergstein<br><br>Bergstein & Ullrich<br>5 Paradies Lane<br>New Paltz, N.Y. 12561<br>(845) 469-1277<br>*Counsel for Plaintiff-Appellant* |

## Table of Contents

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Point I:     Summary judgment was improper on Plaintiff's
retaliation claim under federal, state, and city law . . . . . . . . . . . . . . . 2

Point II:    The district court abused its discretion in ordering
a new trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

              A. The evidence at the first trial was far stronger than
Defendants and the district court have suggested . . . . . . . . . . . . . 6

              B. The size of the compensatory damages award did not
justify ordering a new trial on liability . . . . . . . . . . . . . . . . . . . . . . 11

              C. The size of the punitive damages award did not compel
a new trial on liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Point III:   The district court denied Plaintiff a fair opportunity at
the second trial to prove her damages claims . . . . . . . . . . . . . . . . . . 20

              A. Plaintiff's psychiatric records were admissible . . . . . . . . . . . . . . 20

              B. It was reversible error to preclude Plaintiff's
corroborating witness from testifying through her
deposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# Table of Authorities

*Brady v. Wal-Mart Stores, Inc.*,
 455 F. Supp. 2d 157 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chauca v. Abraham*,
 30 N.Y.3d 325 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Duarte v. St. Barnabas Hospital*,
 341 F. Supp. 3d 306 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Komlosi v. Fudenberg*,
 88 Civ. 1792 (HBP), 2000 WL 351414 (S.D.N.Y. Mar. 31, 2000) . . . 15, 16

*Malek v. Fed. Ins. Co.*,
 994 F.2d 49 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
 715 F.3d 102 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Moll v. Telesector Res. Grp., Inc.*,
 760 F.3d 198 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pucino v. Verizon Wireless*,
 618 F.3d 112 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ramirez v. New York City Off-Track Betting Corp.*,
 112 F.3d 38 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sharkey v. JP Morgan Chase, & Co.*,
 10 CV 3824 (DLC), 2018 WL 1229831 (S.D.N.Y. Mar. 5, 2018) . . . . 16, 17

*Sooroojballie v. Port Auth. of New York & New Jersey*,
 816 Fed. Appx. 536 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Suri v. Grey Global Group, Inc.*,
    164 A.D.3d 108 (1st Dept. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. v. Snype*,
    441 F.3d 119 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Watson v. E.S. Sutton, Inc.*,
    02 CIV. 2739 (KMW), 2005 WL 2170659 (S.D.N.Y. Sept. 6, 2005). . . . . 16

## Preliminary Statement

This appeal challenges three district court orders: (1) the grant of summary judgment on Plaintiff-Appellant's retaliation claim under federal, state, and city law, (2) the district court's order, dated December 15, 2022, granting Defendants' motion for a new trial on liability, and (3) the district court's evidentiary rulings arising from the retrial in February 2023.

Defendants provide no basis to sustain summary judgment on the retaliation claim. They have not shown that Plaintiff Fortessa Qorrolli engaged in unprotected activity in complaining verbally to Dr. Paul I. Cohen about the hostile work environment or in telling Mario Orantes to "back off" his continuous sexual harassment. Defendants argue disputed facts that only a jury can resolve.

Nor have Defendants established that the district court properly vacated the first jury award, as (1) the evidence supports the hostile work environment verdict, as the district court noted in the December 15, 2022 order granting Defendants' new trial motion, (2) the district court issued (and the jury presumably followed) a series of limiting instructions, and (3) the compensatory and punitive damages do not suggest the verdict was defective. Defendants minimize the strength of Plaintiff's hostile work environment case and ignore her argument that the size of the damages awards did not warrant a new trial on liability, and that the better solution was a remittitur.

1

Finally, the evidentiary errors at the second trial denied Plaintiff a fair trial. Nothing in Defendants' brief should convince this Court otherwise, as the jury never saw Plaintiff's medical records, which may well have convinced the jury to award damages for pain and suffering. Despite a doctor's note stating that Plaintiff's corroborating witness was unable to testify in court, the district court also precluded that witness's deposition testimony, which would have supported Plaintiff's punitive damages claim.

### Point I

### Summary judgment was improper on Plaintiff's retaliation claim under federal, state, and city law

Defendants argue that Plaintiff did not engage in protected activity because (1) when she complained about Orantes' sexual harassment, she never used the term "sexual harassment," (2) she could not recall what year the sexual harassment occurred, (3) she could not recall precisely when she complained to Dr. Cohen about the harassment, (4) she told Orantes to "back off" without connecting that directive to his sexual harassment, (5) rebuffing Orantes' sexual harassment was not protected activity, and (6) Plaintiff's letter to Dr. Cohen did not mention sexual harassment and raised other workplace grievances. (Def. Br. at 4-6). These arguments would resolve disputed facts and do not entitle Defendants to summary judgment on Plaintiff's retaliation claim.

First, Plaintiff told Dr. Cohen "many times" about Orantes' unwanted sexual advances. *See* Opening Br. at 31 (citing JA 85 at 65-66; JA 90 at 86-88; JA 94 at 101; JA 98 at 117). She once told Dr. Cohen, "I'm not going to be put in a position where I have to be sexually involved in order to keep my job here," and that Orantes was having sex with her female coworkers, allowing them to "get away with everything" for which Plaintiff was taking the blame. (JA 90 at 88); *see also* JA 90 at 86 ("Q: So at some point, you go to Dr. Cohen about these perceived sexual advances from Mario, correct? A: Correct"); JA 94 at 101 (Q: "You indicated that sometime in 2015, you had complained to Dr. Cohen about Mario's alleged unwanted sexual advances, correct? A: Correct"). In its subsequent ruling granting Defendants' motion for a new trial, the district court noted the trial record shows that "Qorrolli testified that she told Dr. Cohen multiple times that Orantes was sexually harassing her, but that Dr. Cohen refused to do anything about the harassment." (SPA 23). And, while Defendants argue that Plaintiff could not identify the year she told Dr. Cohen about the sexual harassment (Def. Br. at 5), she testified it was most likely 2015. (JA 94 at 101; JA 91 at 91). Defendants ignore Plaintiff's argument that, while her letter to Dr. Cohen did not expressly refer to sexual harassment, since that letter was written in early 2016 (SPA 3), the jury may infer that Dr. Cohen had reason to know that, in discussing Orantes' abusive tactics in the workplace, Plaintiff was referring to her conversation with

3

Dr. Cohen in 2015 about Orantes' sexual harassment. *See* JA 98 at 117 ("What I decided I would do first was I would complain to Dr. Cohen, and a few times, I talked to him in person, and he just responded with you're fucking crazy, you don't know what you're talking about, and just shut me down. So this time, I said you know what, maybe if I give him a letter for him to read").

Defendants also argue that Plaintiff did not engage in protected activity in rebuffing Orantes' sexual advances, noting that the law is unclear on this point. (Def. Br. at 5-6) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 115 n.12 (2d Cir. 2013)). Defendants do not further develop this point, and they ignore Plaintiff's argument that district courts in the Second Circuit and the EEOC have concluded that plaintiffs engage in protected activity in telling the harasser to stop the sexual harassment. *See* Opening Br. at 33-34.

Defendants do not respond to Plaintiff's contextual argument on her "back off" directive, claiming instead that "[i]t could reasonably be construed as the declarant now wanting to speak to or interact with anyone (including Orantes) at the moment, for example." (Def. Br. at 5). While that may be one interpretation, on this record, it is not the only interpretation. Only a jury can resolve that issue.

Defendants instead raise a factual argument: Plaintiff did not engage in protected activity in telling Orantes to "back off" because she did not mention the unwanted sexual advances. *Id.* at 4-5. But Plaintiff did not simply tell Orantes to

"back off" and then walk away, leaving the matter ambiguous. She told Orantes to "get off of me and you need to back off and leave me alone because I can't take this anymore." (JA 94 at 103-04). She added, "You know exactly what I am talking about," and "[t]his is about what you're doing to me." (JA 95 at 105-06). If the jury credits Plaintiff's testimony that Orantes had been routinely sexually harassing her when she said this – and it did credit Plaintiff's testimony at both trials that Orantes had sexually harassed her – then the reasonable inference is that Orantes knew she was objecting to the sexual harassment.

## Point II

### The district court abused its discretion in ordering a new trial

In ordering a new trial on liability, the district court noted that "'[a] verdict may be against the weight of the evidence when it is based on 'irrelevant and prejudicial testimony,' even if the court has given a limiting instruction," and "[a] special case of the general power to order relief under Rule 59 arises in the context of excessive verdicts." (SPA 36). The district court determined that (1) "[a] significant portion of the plaintiff's case was based on inadmissible and prejudicial hearsay" (SPA 38), (2) "the plaintiff's testimony regarding her own harassment was, in comparison, minimal" (SPA 39), and (3) "[t]he jury's damages award illustrates that its verdict was not based on the admissible evidence introduced at trial of Orantes' treatment of plaintiff." (SPA 41).

5

Plaintiff argues that the court abused its discretion in ordering a new trial because (1) she presented a strong sexual harassment case even without evidence about how Orantes treated other women in the workplace, (2) the district court minimized the strength of Plaintiff's overall case, (3) the verdict was not tainted by inadmissible evidence, (4) the jury is presumed to follow the district court's limiting instructions on Plaintiff's evidence relating to her female coworkers, and (4) the size of the damages awards cannot suggest the verdict was driven by inadmissible evidence. In their opposition brief, Defendants either overlook these arguments or reframe them without directly addressing whether the district court abused its discretion in ordering a new trial on liability.

### A. The evidence at the first trial was far stronger than Defendants and the district court have suggested.

Defendants erroneously claim Plaintiff did not present enough evidence to support a hostile work environment claim because (1) she only identified two incidents of physical contact, both involving touching without explicit sexual overtures, (2) the first trial "was solely dependent on inadmissible hearsay and innuendo" about Orantes' unsubstantiated sexual escapades; (3) Plaintiff lacked first-hand knowledge of Orantes' sexual misconduct; (4) Plaintiff did not identify a single incident within the statute of limitations period; (5) the "harsh discipline" against Plaintiff was "legitimate workplace feedback and/or discipline"; and (6) Plaintiff only presented one first-hand witness and one exhibit. (Def. Br. at 9-10).

First, the district court – even while ordering a new trial on liability – recognized that Plaintiff produced enough evidence of sexual harassment to defeat Defendants' motion for judgment as a matter of law, and that "[a] jury, crediting the plaintiff's testimony, could find that the harassment she experienced pervaded her employment and took place within the limitations period." (SPA 34); *see also* SPA 35 ("The plaintiff put forward evidence that, if credited by the jury, established the elements of her claims). The district court noted that the continuing violations rule allowed the jury to consider all acts of sexual harassment provided the last act fell within the limitations period, and that while the statute of limitations is an affirmative defense, "the defendant produced no evidence to show that the alleged conduct fell outside of the statute of limitations." (SPA 34-35 n.5). Accordingly, the issue is not whether Plaintiff had enough evidence to support the verdict, but whether the district court minimized the strength of the case in holding that other trial errors and the size of the damages awards compelled a new trial on liability.

Like the district court, Defendants' remaining arguments play down the strength of Plaintiff's evidence. Plaintiff has demonstrated that her evidence was far stronger than the district court had suggested in ordering a new trial on liability. (Opening Br. at 40-45). As Defendants note, Plaintiff identified two physical incidents with specificity. *See* SPA 23 ("In one incident, Orantes met Qorrolli in an

7

elevator as she was returning from the gym. He touched her butt and commented on its firmness. In another incident, after reprimanding Qorrolli in front of Dr. Cohen, Orantes took Qorrolli into a private room" and "hugged her, wiped her tears, and kissed her cheek"). But the harassment went far beyond that. Even the district court noted that "Qorrolli testified that Orantes would frequently engage in this type of conduct after reprimanding her in front of Dr. Cohen" and that she testified "that Orantes would frequently make comments about her appearance or her body" and she "felt pressured to accept his conduct." (*Id.*) At least every other day for six years (JA 756, 779-780, 836), Orantes made persistent, unwanted sexual advances by (1) physically maneuvering Plaintiff into a vacant office for sexual liaisons (JA 711); (2) touching Plaintiff's body "many times," at least a few times per week (JA 712, 836); (3) kissing Plaintiff, touching her rear-end, and grabbing her thigh (JA 711-12, 781); and (4) regularly commenting on Plaintiff's body in sexual terms and stating he loved her. (JA 710, 714-15). This testimony, of course, drew from Plaintiff's personal knowledge. However, undermining Defendants' argument that "Plaintiff's case in chief consisted of only one first-hand witness" (Def. Br. at 9), Plaintiff's mother corroborated this testimony. (JA 895, 899, 909-911, 939-940).

While Defendants note that "Plaintiff testified that she experienced sexual harassment every day and all the time" (Def. Br. at 9), and that she did not identify

"the number of times [the harassment] allegedly occurred" (*id*. at 10), her testimony that the harassment was continuous demonstrates it was pervasive under Title VII. *See* Opening Br. at 41 (citing *inter alia Pucino v. Verizon Wireless*, 618 F.3d 112, 119-120 (2d Cir. 2010)). That testimony would also satisfy the more plaintiff-friendly "treated less well" test under the City HRL, as routine sexual harassment and demands for sex at work are not a "petty slight" or "trivial inconvenience." *Suri v. Grey Global Group, Inc*., 164 A.D.3d 108, 114 (1st Dept. 2018).

Defendants further argue that Plaintiff lacked first-hand knowledge of Orantes' sexual escapades in the workplace "because she did not hear or see it." (Def. Br. at 9). But Plaintiff testified to not only what she experienced first-hand but what she observed first-hand. Plaintiff was certainly able to infer that Orantes was having sex with her female colleagues when she saw them disappear into empty offices for extended periods of time. (JA 702-04, 706-07, 792). The jury could draw the same inference. As the district court noted in the post-trial ruling:

> Qorrolli also witnessed events around the office that caused her to believe that Orantes was sexually harassing or otherwise sexually involved with other employees. Qorrolli would often see Orantes pull a female employee into a room and close the door behind them, from which she inferred that Orantes was sexually harassing or having sex with the employee. Qorrolli also saw Orantes rub himself against another employee with his groin and make crude comments about her appearance. And one occasion, Qorrolli walked in on Orantes and another employee holding each other close, with the employee's jacket down around her shoulders and lipstick smudged on her face.

9

(SPA 24). In rendering a verdict in Plaintiff's favor, the jury drew the inference that Plaintiff saw Orantes sexually harass these women and that he was trying to do the same with Plaintiff. While Plaintiff did not literally "have first-hand knowledge of what Mr. Orantes alleged did with others" behind closed doors (Def. Br. at 9), the fair inference is that he was abusing his authority as a supervisor in having sex with these women, especially when Plaintiff saw Orantes and another female employee exit a room after 20 minutes with her lab coat down her shoulders and lipstick smudged on her face. (JA 706-07).

Defendants also claim the harsh discipline that Orantes extended to Plaintiff cannot support her sexual harassment claim, as management was merely enforcing legitimate workplace discipline. (Def. Br. at 9). But they do not respond to Plaintiff's argument that while Orantes repeatedly tried to get Plaintiff fired, he did so after she rejected his sexual advances, and he falsely blamed her for office problems and lied to Dr. Cohen about her competence. (Opening Br. at 10-11). The trial record does not conclusively establish that Orantes or Dr. Cohen disciplined Plaintiff for legitimate reasons, and Defendant cites to no such evidence, referring instead to the summary judgment ruling, where the district court noted that Plaintiff had complained to Dr. Cohen about "excessive hours, being forced to work harder than the other hygienists, taking the blame for the lapses of other staff, and enduring Orantes' and Dr. Cohen's constant insults about her intelligence and

productivity." (SPA 3) (cited in Def. Br. at 9). That language supports Plaintiff's case, as this testimony suggests Plaintiff was singled out for unfair discipline. As Plaintiff has argued in her Opening Brief, facially-neutral mistreatment may support the hostile work environment claim if the harasser is also responsible for the mistreatment. (Opening Br. at 45) (citing *inter alia Moll v. Telesector Res. Grp. Inc.*, 760 F.3d 198, 203 (2d Cir. 2014)).

### B. The size of the compensatory damages award did not justify ordering a new trial on liability.

The district court granted a new trial on liability, in part, based on the size of the damages award for pain and suffering, noting that "[a] special case of the general power to order relief under Rule 59 arises in the context of excessive verdicts." (SPA 36). After determining that "[t]he jury's damages award illustrates that its verdict was not based on the admissible evidence introduced at trial of Orantes' treatment of the plaintiff," and that her emotional distress evidence "straddles the line between 'garden variety' and 'significant,'" the district court held that $575,000 in damages exceeds "even some of the highest amounts approved in cases involving 'significant' emotional distress." (SPA 41). On appeal, Plaintiff argues that, in light of "the strength of Plaintiff's case on liability and the limiting instructions that the jury presumably followed in rendering its verdict, even if this Court deems the damages award excessive, it is not so excessive as to warrant a new trial on liability. It would instead warrant a remittitur." (Opening Br.

11

at 58). Rather than squarely address the district court's analysis, Defendants simply argue that the damages were excessive. However, excessive damages and those that warrant a new trial on liability are two different things.

First, Defendants claim the anonymous fax "invit[ed] the jury to award damages based on scandalous and inflammatory hearsay without foundation, authentication or cross-examination." (Def. Br. at 17). While the district court stated in the new trial ruling that Plaintiff "shared with the jury, and frequently referenced, an anonymous fax to MDA offices accusing Orantes of sexual misconduct, among other forms of impropriety" (SPA 38), at trial, the judge issued a limiting instruction on this exhibit, directing the jury to only consider its impact on Plaintiff (JA 723-24) and "what happened as a result of it being received" (JA 726-27), a relevant factor in determining employer liability, as reflected in the jury instructions. (JA 1001-04). Plaintiff told Dr. Cohen that the fax confirmed what she had been telling him about Orantes (JA 729, 758, 760-61), specifically, how Orantes harasses the women who do not succumb to his advances. (JA 729). Contrary to Orantes' testimony, Dr. Cohen never investigated the allegations in the fax (JA 720-21, 868-871), signaling to Orantes that he could do whatever he wanted. The jury presumably followed the trial court's limiting instruction regarding the fax. *See U.S. v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006). Defendants do not address Plaintiff's arguments on this issue at all.

Defendants argue that Plaintiff only proved garden variety damages for emotional distress. (Def. Br. at 10-11). But the district court held that Plaintiff's pain and suffering "straddles the line between 'garden variety' and 'significant' emotional distress." (SPA 41). Even under the district court's characterization, Plaintiff's damages are not so excessive as to compel a new trial, and they do not suggest the award was "severely out of proportion to the conduct demonstrated at trial." (SPA 43). As corroborated by her mother, Plaintiff testified that the harassment lasted several years and caused anxiety, depression, dizziness, and panic attacks, requiring prescription drugs: Zoloft and Klonopin. (Opening Br. at 55-58). As a result of the harassment, Plaintiff lost the will to live, she still suffers from anxiety and depression, and she sought therapy for the first time in her life. *Id*. at 55-58; JA 761-778. At a minimum, these damages are significant and life-changing. While courts routinely reduce large damages awards in employment discrimination cases, including awards that far exceed what the jury awarded in this case, they often leave the prevailing plaintiff with a six-figure result. *See* Opening Br. at 58-59. Since juries are never instructed on dollar amounts and they have no awareness of the reasonable range of damages awards, excessive damages awards are commonplace. But absent compelling circumstances – which this case does not present – the solution is not to discard the verdict entirely; the solution is to enter a remittitur.

In support of their argument, Defendants rely heavily on *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. Appx. 536 (2d Cir. 2020), which reduced a $2.16 million pain and suffering award to $250,000. (Def. Br. at 12-13). The analysis in *Sooroojballie* helps Qorrolli's case. Despite the 8.64% reduction ratio in *Sooroojballie*, there was no suggestion that the jury's award was so excessive that a new trial on liability was in order.

The cases cited in *Sooroojballie* in support of this reduction also demonstrate that the district court in Qorrolli's case abused its discretion in vacating the liability verdict altogether.

In *Ramirez v. New York City Off-Track Betting Corp.*, 112 F.3d 38 (2d Cir. 1997), this Court held the trial court did not abuse its discretion in reducing the damages award from $1.14 million to $500,000 where the plaintiff was "rendered permanently non-functional" and unemployable for life. *Id*. at 41 n.1. The $500,000 award in *Ramirez* is equal to $958,476.64 in 2023 dollars.[1] While Qorrolli is not "permanently non-functional," her pain and suffering is significant, causing years-long anxiety and depression, with physical manifestations: disfigurement to her face and panic attacks. (JA 711, 903-04). The high damages in *Ramirez* did not compel a new trial on liability even though the trial court reduced it by more than 50%. Such a reduction in Qorrolli's case – if any reduction is

---

[1] *See* https://www.usinflationcalculator.com/

warranted – would leave her with $287,500, within the range of significant pain and suffering awards in the Second Circuit. *See Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018) ("Usually, . . . the top of the range for significant emotional distress damages is $200,000"). Had the district court reduced Qorrolli's damages award by 50%, as the district court did in *Ramirez*, the final award would not have been so excessive as to warrant a new trial on liability. While this Court noted in *Ramirez* that an excessive jury award may justify a new trial on liability, "the cases in which the jury's award is seen to reflect prejudice, however, are generally limited to those in which the remittitur granted is totally out of proportion to the damages allowed by the district court. The remittitur in this case was a far lower fraction of the total verdict, and will be so even after discounting. The verdict is not so excessive as to demonstrate prejudice in itself." 112 F.3d at 41. As demonstrated in Plaintiff's Opening Brief and herein, the $575,000 damages award is not "totally out of proportion to the damages allowed by the district court." Had the district court deemed that award excessive, the solution was not a new trial on liability but a remittitur.

*Sooroojballie* also cited *Komlosi v. Fudenberg*, 88 Civ. 1792 (HBP), 2000 WL 351414 (S.D.N.Y. Mar. 31, 2000), which reduced a $5.2 million pain and suffering verdict to $500,000, a 10:1 ratio. *Id*. at *17. That ratio would far exceed any such reduction on Qorrolli's case, as the district court held that her pain and

15

suffering straddles garden variety and significant damages. Yet, the district court in *Komlosi* – which also reduced the $10 million punitive damages award to $500,000 – did not order a new trial on liability; it reduced the damages award instead.

Finally, *Sooroojballie* cited *Watson v. E.S. Sutton, Inc.*, 02 CIV. 2739 (KMW), 2005 WL 2170659 (S.D.N.Y. Sept. 6, 2005), *aff'd*, 225 Fed. Appx. 3 (2d Cir. 2006), which reduced the $500,000 pain and suffering award to $120,000. *Id.* at *16. Despite this sharp reduction, the remittitur sufficed to regulate the damages award. The district court, which noted the jury award fell "well outside the acceptable range of damages under the law" (*id.*), did not even contemplate ordering a new trial on liability.

Ordering a new trial on liability in the face of a large damages award is the exception. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 188-89, 199-201 (E.D.N.Y. 2006) (although the jury may have "blurr[ed] . . . the line between compensation and punishment," the trial court (1) rejected the defendant's claim that a new trial was warranted on the basis that the "sheer size of the award" proves the jury was swayed by "passion and prejudice," and (2) reduced the award from $2.5 million to $600,000), *aff'd* 531 F.3d 127 (2d Cir. 2008).

Defendants cite only one case where the district court ordered a new trial on liability based on size of the jury's verdict, *Sharkey v. JP Morgan Chase, & Co.*, 10 CV 3824 (DLC), 2018 WL 1229831 (S.D.N.Y. Mar. 5, 2018), a Sarbanes-

Oxley retaliation case. That case is an outlier. The jury awarded the plaintiff the same amount of money for pain and suffering and lost wages: $563,000. *Id*. at *2. After determining the evidence at trial "barely" supported the liability verdict, *id*. at *10, the district court deemed the back pay award excessive because the plaintiff did not sufficiently mitigate damages. *Id*. at *10-11. The pain and suffering award was also excessive because the plaintiff only sustained garden-variety distress and offered limited testimony on that issue, entitling her to $20,000 to $50,000. *Id*. at *11-12. Significantly, the pain and suffering damages was identical to the lost wages damages, which "indicates that the jury acted out of passion in favor of Sharkey, or prejudice against J.P. Morgan, and not on the basis of the trial evidence and the law provided in the jury charge." *Id*. at 12. Qorrolli's case is nothing like *Sharkey*, as the jury did not award identical damages for all her claims, and unlike the "brief and largely conclusory" pain and suffering testimony in *Sharkey*, Qorrolli offered detailed testimony which her mother corroborated, and her pain and suffering award is not unduly excessive under the three-part damages matrix adopted in *Sooroojballie*.

### C. The size of the punitive damages award did not compel a new trial on liability.

Plaintiff has demonstrated that Defendants' actions and inactions supported the jury's punitive damages award. (Opening Br. at 61-62). Unwanted touching and repeated demands for sex in the workplace are always reprehensible, and the

sexual harassment was sufficiently pervasive that the district court denied Defendants' motion for judgment as a matter of law (SPA 35), contradicting Defendants' appellate claim that the evidence "does not even support a finding of liability," much less punitive damages. (Def. Br. at 18). Plaintiff also demonstrated in her Opening Brief that the jury awarded punitive damages because Dr. Cohen, who owned the business, (1) allowed Orantes to abuse his authority in pressuring women for sex in the office, (2) did not investigate Plaintiff's complaints, and (3) responded to her complaints with callous indifference, telling Plaintiff that she was "fucking crazy." (Opening Br. at 61-62).

Defendants ignore Plaintiff's argument that $2 million in punitive damages award does not establish the jury resolved this case through passion and prejudice. Defendants also ignore Plaintiff's argument that the district court improperly assumed the jury based its punitive damages award solely on the company's failure to maintain a sexual harassment policy. *Id*. at 61 (citing SPA 45). Nor do Defendants cite any cases in support of their argument that the punitive damages were excessive.

As demonstrated in the Opening Brief, viewing the record in the light most favorable to Plaintiff, the punitive damages fairly punished MDA for the pervasive hostile work environment and Dr. Cohen's deliberate failure to investigate Plaintiff's complaints or to even protect her from Orantes' predatory behavior.

18

Instead, Defendants argue the facts in asserting (1) Plaintiff produced no evidence of indifference or recklessness to her safety or others, (2) "[t]he two alleged incidents cannot be characterized as repeated or consistent, nor severe or malicious," (3) there was no sexual groping, assault or violence, (4) the harassment was not "particularly egregious or long-lasting," and (5) Orantes "[n]otably" contradicted Plaintiff's testimony, which had "substantial inconsistencies." (Def. Br. at 18). These arguments are meritless, and the evidence refutes Defendants' factual arguments.

First, as Plaintiff has demonstrated on appeal, she presented substantial evidence of indifference and recklessness as Orantes harassed her mercilessly for several years and Dr. Cohen callously dismissed her objections, placing Plaintiff and her female colleagues at further risk of Orantes' sexual misconduct, which included not just verbal abuse but physical sexual acts behind closed doors. Orantes also groped Plaintiff. (JA 712-13, 781). The record simply does not support Defendants' contention that, "Plaintiff did not produce evidence of indifference or recklessness to her safety or others." (Def. Br. at 17). To the contrary, the record is replete with evidence that Defendants demonstrated a conscious disregard not only for Plaintiff's rights, but the rights of all women employed by MDA. Orantes' sexual harassment and Dr. Cohen's deliberate failure to reign in Orantes, his trusted subordinate (Opening Br. at 8) was "particularly

egregious" and "long-lasting," as it lasted six years (JA 756, 895) and would offend any reasonable jury; it certainly offended this jury, which awarded Plaintiff $2 million, recognizing in the "me-too" era that an educated and experienced professional like Dr. Cohen knew better than to allow Orantes to sexually harass his female employees. As for Defendants' argument that Orantes contradicted Plaintiff's testimony, that argument is frivolous. It is black-letter law that the prevailing plaintiff's testimony is deemed true for purposes of appellate review. Contrary to Defendants' argument (Def. Br. at 18), Plaintiff is not required to show malice under the City Human Rights Law. *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017).

## Point III

### The district court denied Plaintiff a fair opportunity at the second trial to prove her damages claims

Should this Court reject Plaintiff's argument that the district court abused its discretion in ordering a new trial on liability, it should find that the second trial denied Plaintiff the opportunity to prove her damages, resulting in nominal damages, which hardly compensates her for the extensive harassment proven at the second trial.

### A. Plaintiff's psychiatric records were admissible.

Although they initially conceded prior to the first trial that the medical records were admissible (JA 1655-56), Defendants argue that the district court did

not abuse its discretion in precluding Plaintiff's medical records because (1) they only contain general descriptions of her mental state, (2) many of the later entries are "cut and paste" repetitions of prior entries, (3) "[t]here is no description of a specific event and no use of the term sexual harassment," (4) the records "contain no statement of causation" for Plaintiff's emotional stress, and (5) she testified at trial about her emotional state. (Def. Br. at 19-20). Defendants' arguments, devoid of any legal authority, ignore Plaintiff's arguments and do not support the district court's ruling.

First, Defendants note that the "general descriptions of Plaintiff's mental well-being" mention "problems in the workplace" (*id*. at 19), an obvious reference to Orantes' sexual harassment. These records note that Orantes was "very manipulative and verbally abusive" and "it is happening 1-2 times a week." (SPA 138; Sealed JA 31). While the records do not expressly mention "sexual harassment," Plaintiff's counseling sessions were not an evidentiary proceeding. The jury could infer that she discussed these events in the manner she felt comfortable. But juries are also intelligent enough to know from reviewing the medical records that Plaintiff was referring to sexual harassment, particularly since she referenced Orantes' manipulative and verbally abusive tactics.

Defendants also object that the medical records "contain no statement of causation." But the jury could draw the inference that since the medical records

21

refer to Orantes' abusive behavior, her difficulties sleeping and her depression (Def. Br. at 19), the work environment caused her pain and suffering. As Plaintiff notes in her Opening Brief, the records detail the nature of her pain and suffering and connect her condition with her work environment, noting in part that "[s]he has been very frustrated at work for 5-6 years." (Sealed JA 28). Dr. Lee's records state that Plaintiff has no past psychiatric history, no prior history of a psychiatric disorder, has never been psychiatrically hospitalized, and has never received outpatient mental health treatment. (Sealed JA 29). Dr. Lee's notes also state that "Ms. Qorrolli attributes her depressive symptoms to problems in the workplace." (*Id.*)

There is nothing "confusing" about asking the jury to find that the sexual harassment caused Plaintiff's emotional distress. Defendants' argument on this point is ironic, as they argued in summation that the real cause of Plaintiff's pain and suffering was her childhood experience in Kosovo (JA 1561-62) even though the record contains no evidence that Kosovo caused Plaintiff's damages. This argument was far more confusing than anything in the medical records.

Defendants argue that the medical records include "cut and paste" entries about Plaintiff's mental state. (Def. Br. at 19). This argument is for the jury, not the district court on a motion *in limine*. The manner in which Plaintiff's doctor maintained his notes has no bearing on whether the records are admissible. If there

was nothing more for the doctor to add about Plaintiff's condition, then a "cut and paste" entry will suffice. If anything, the "cut and paste" shows that Plaintiff was not making any progress because her anxiety and depression were now deep-rooted because of her terrible workplace experience. If Defendants think the "cut and paste" is insufficiently reliable, they can make that argument to the jury.

Finally, while Defendants suggest harmless error because Plaintiff testified about her emotional state (Def. Br. at 20), the medical records could well have convinced the jury that her testimony was reliable and worthy of damages exceeding $1.00. In the face of Plaintiff's testimony about her therapy sessions and medication, the jury may have wondered why they could not review the medical records. The absence of these records could have convinced the jury that Plaintiff's damages were minimal or non-existent. We know this because Plaintiff testified at the second trial about the sexual harassment and its effect on her emotional state, and her mother corroborated that testimony. (Opening Br. at 23-25). Defendants did not provide or adduce any evidence to contradict Plaintiff's evidence of emotional distress. Defendants never hired an expert, never requested an independent medical examination of Plaintiff, and never produced any evidence (in the form of documents or testimony) to rebut Plaintiff's claim for emotional distress. Her damages were clear and uncontroverted. It is highly unusual for a jury to award no damages upon finding the plaintiff endured sexual harassment. The

medical records could have made the difference. In that light, "one cannot say, with fair assurance that the judgment was not substantially swayed by the [evidentiary] error," making it "impossible to conclude that substantial rights were not affected." *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993).

### B. It was reversible error to preclude Plaintiff's corroborating witness from testifying through her deposition.

Defendants argue that the district court did not abuse its discretion in requiring Mercedes Vila to testify in person rather than through her deposition testimony because (1) when Defendants' counsel deposed Vila, he did so at her workplace, which means she could have traveled to the courthouse, and (2) her testimony was "irrelevant, duplicative and prejudicial." (Def. Br. at 21). These arguments cannot support the district court's evidentiary ruling.

First, without a concrete reason to doubt Vila's doctor's assessment that Vila, who had "severe anxiety disorder" and was undergoing treatment for breast cancer, was unable to attend court (JA 1248, 1532), the district court abused its discretion in concluding instead that "it appears to me . . . that the doctor has accommodated a witness's desire not to appear because of the emotional stress that that would place the witness under." (JA 1533; SPA 143-44). Nor would Defendants have sustained any prejudice had Vila testified through her deposition, as Vila was under oath, and she was subject to cross-examination, as Plaintiff took that deposition on October 19, 2022 (on the eve of the first trial) and Defendants

knew this was their opportunity to challenge her testimony in the event it was read to the jury.

Defendants argue that Vila was able to testify in-person because her Zoom deposition (JA 1530) was taken at her place of employment. But the issue is not whether Vila was well enough to testify at the first trial in October 2022 but whether her doctor's note, on February 6, 2023, mentioning her "serious medical conditions" (SPA 143), was enough to allow Plaintiff to read her testimony to the jury at the re-trial that month. Vila's physical condition had apparently worsened by February 2023 such that her doctor counseled against in-person testimony. The district court's suggestion that the doctor was simply accommodating Vila's desire to avoid court altogether was speculative and prejudicial to Plaintiff, who needed Vila to corroborate her testimony that she complained to Dr. Cohen about Orantes, that Orantes made inappropriate sexual comments toward Vila, and she once saw Orantes touch Plaintiff's waist. (SPA 141; JA 1254-57).

This deposition testimony also supported Plaintiff's punitive damages claim, as it may have convinced the jury that she complained about Orantes to Dr. Cohen, and that her complaints were ignored. Vila's testimony would have further corroborated the hostile work environment claim, further supporting the punitive damages claim under the more plaintiff-friendly New York City HRL. Plaintiff gave the district court a proffer of Vila's deposition testimony: (1) she joined

Plaintiff in complaining to Cohen about Orantes' unwelcome sexual advances, (2) she personally experienced unwelcome sexual advances from Orantes; and (3) she personally observed Orantes make unwelcome sexual advances toward Plaintiff. Vila's testimony was relevant to Plaintiff's claim for hostile work environment, as well as punitive damages. Accordingly, while Defendants argue that Vila's testimony was "irrelevant, duplicative and prejudicial" (Def. Br. at 21), the opposite is true. Defendants do not advance a convincing argument that this evidentiary ruling did not impair Plaintiff's substantial rights at the second trial. *Malek*, 994 F.2d at 55.

## Conclusion

This Court should vacate the grant of summary judgment on Plaintiff's retaliation claim. It should also vacate the district court's new trial order, dated December 15, 2022, and reinstate that verdict. In the alternative, on the basis of the district court's evidentiary errors, this Court should vacate the judgment on the second trial and remand the case to the district court for a trial on compensatory and punitive damages.

Dated: December 8, 2023

Respectfully submitted,



| | |
|---|---|
| Derek Smith<br>Zachery I. Holzberg<br><br>Derek Smith Law Group<br>1 Penn Plaza<br>New York, N.Y. 10119<br>(201) 925-2540 | Stephen Bergstein<br><br>Bergstein & Ullrich<br>5 Paradies Lane<br>New Paltz, N.Y. 12561<br>(845) 469-1277<br><br>*Counsel for Plaintiff-Appellant* |

**Certification**

Stephen Bergstein, counsel for Plaintiff-Appellant, affirms that this brief complies with FRAP 32(a)(7) in that it utilizes non-proportional typeface with no more than 10.5 characters per inch. The font is Times New Roman 14-point. The brief contains 6,331 words.

Stephen Bergstein